# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 25, 2025

Lyle W. Cayce
Clerk

No. 24-30295

————————

Damien Kentreal Johnson,

*Plaintiff—Appellant*,

*versus*

Jefferson Parish Sheriff Office; Joseph P. Lopinto,

*Defendants—Appellees*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:24-CV-80

———————————————————————

Before Dennis, Haynes, and Engelhardt, *Circuit Judges*.

Per Curiam:[*]

Pro se plaintiff and pretrial detainee Damien Johnson follows the Rastafarian religion and took a religious vow that prevents him from cutting his hair. Adhering to that vow, Johnson refuses to cut his hair to comply with Jefferson Parish Sheriff's Office's ("JPSO") policy. As a consequence, he is not allowed to go into the yard, use the phone, or buy items from the commissary. Instead, he alleges he is confined to an unsanitary unit infected

---

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-30295

with toxic mold. Johnson sues under 42 U.S.C. § 1983 for injunctive relief[1] and damages, alleging that JPSO and Sheriff Joseph Lopinto punished him for his religious beliefs. In its initial screening of the case, the district court dismissed the complaint with prejudice as frivolous and for failure to state a claim. *See* 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1). Because Johnson alleges enough facts to survive initial screening, we REVERSE as to the claims against Sheriff Lopinto in his official capacity, and REMAND.[2]

## I.   Standard of Review

We review the district court's dismissal de novo. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009) (per curiam). We view facts in the light most favorable to the plaintiff, construing pro se complaints liberally. *Carlucci v. Chapa*, 884 F.3d 534, 537–38 (5th Cir. 2018). A complaint fails to state a claim if it does not "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

---

[1] Our search of detainees in JPSO custody returns no results for Johnson. If Johnson has indeed been released or moved elsewhere, his request for injunctive relief is probably moot. *See Herman v. Holiday*, 238 F.3d 660, 665 (5th Cir. 2001) (affirming that transfer from complained-of facility mooted inmate's claims for declaratory and injunctive relief). However, even if injunctive relief is moot, Johnson can still pursue his claim for damages. *See Cozzo v. Tangipahoa Par. Council—President Gov't*, 279 F.3d 273, 280–83 (5th Cir. 2002) (explaining that a suit against a sheriff in his official capacity is considered a suit against a political subdivision); *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 290 (5th Cir. 2012) (holding that a political subdivision can be sued for money damages under RLUIPA and § 1983). Because the suit will continue regardless of whether the request for injunctive relief is moot, we leave it to the district court to address whether injunctive relief is available.

[2] Johnson sued JPSO and Sheriff Lopinto in his individual and official capacities. The district court dismissed all claims against JPSO and all individual capacity claims against Sheriff Lopinto because JPSO is not capable of being sued, and because Johnson does not allege a causal link between Lopinto and his claims. Johnson does not challenge these conclusions on appeal, so we leave them undisturbed.

544, 570 (2007)).  A complaint is frivolous if it "lacks any arguable basis in law or fact." *Samford*, 562 F.3d at 678 (quotation omitted).

## II.    Analysis

Johnson sues under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").    Both the First Amendment and RLUIPA protect the free exercise of religion, but RLUIPA imposes a more stringent standard than the First Amendment. *See Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 335 (5th Cir. 2009).

### A. RLUIPA

RLUIPA bars government actors from imposing a substantial burden on the religious exercise of a person confined to an institution unless the imposition furthers a compelling governmental interest and is the least restrictive means of doing so.    42 U.S.C. § 2000cc-1(a); *see id.* § 1997(1)(B)(iii) (defining "institution" to include "a pretrial detention facility").

We review RLUIPA claims using a burden-shifting framework. First, the plaintiff must show that the government has substantially burdened his exercise of religion. *Holt v. Hobbs*, 574 U.S. 352, 362 (2015).  A policy creates a substantial burden on a religious exercise "if it truly pressures the adherent to significantly modify his religious behavior and significantly violate his religious beliefs." *Adkins v. Kaspar*, 393 F.3d 559, 570 (5th Cir. 2004).  A policy can have this effect if it "(1) influences the adherent to act in a way that violates his religious beliefs, or (2) forces the adherent to choose between, on the one hand, enjoying some generally available, non-trivial benefit, and, on the other hand, following his religious beliefs." *Id.*  If the plaintiff succeeds in demonstrating a substantial burden, the defendant must then justify the relevant act or policy by showing that it was (1) in furtherance of a compelling government interest; and (2) the least restrictive means of

furthering the compelling government interest. *Holt*, 574 U.S. at 362 (citing 42 U.S.C. § 2000cc-1(a)).

Here, the district court concluded that Johnson failed to allege a substantial burden on his religious exercise because he "is in fact still exercising his vow to continue growing his hair." But this conclusion has the problematic result of decreasing protection for the staunchest religious observers who have to face severe punishment to continue exercising their religion. Indeed, the district court is wrong—an individual can face a "substantial burden" on religious exercise based upon limitations and punishments in the prison while continuing to exercise their religion. *See Adkins*, 393 F.3d at 570.

We hold that the district court erred in dismissing Johnson's claim at this early stage. Johnson alleges that, based on his refusal to cut his hair, he is not allowed to buy items at the commissary or to escape his black-mold-infested dorm by going outside. In addition, he claims that for over nine months he has been unable to use a phone to speak to "family and friends" or "people who can help [him] with [his] criminal case." These factual allegations satisfy Johnson's initial burden at the prescreening stage as they allege that he is being punished for exercising his religion. *See Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 794 (5th Cir. 2012) (concluding that forcing prisoners to pay for kosher meats rather than providing them free of charge substantially burdened the religious exercise of a Jewish inmate); *A.A. ex rel. Betenbaugh v. Needville Indep. Sch. Dist.*, 611 F.3d 248, 266 (5th Cir. 2010) (affirming that, under the Texas Religious Freedom Restoration Act which applies the same standard as RLUIPA, a student faced a substantial burden because he would "be exposed to punishment" if he did not comply with grooming policy that infringed religious exercise). Accordingly, the district court erred in dismissing the RLUIPA claim at the initial screening stage and before the filing of any responsive pleadings.

No. 24-30295

## B. First Amendment

Under *Turner v. Safley*, a prison policy or practice is constitutional if it is reasonably related to a legitimate penological interest. 482 U.S. 78, 89–91 (1987) (outlining four factors to consider in assessing whether a prison policy is constitutional). The district court applied *Turner* to conclude that security and hygiene concerns justify the haircut policy. Assuming *Turner* applies, the district court failed to connect that interest to the practice of punishing detainees for not cutting their hair, especially given that Johnson was in pretrial detention rather than prison. *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) ("[T]he State must distinguish between pretrial detainees and convicted felons in one crucial respect: The State cannot punish a pretrial detainee."). Further, it is not the court's job to speculate about the concerns underlying the policy. Rather, it is up to the officials to "put forward" their concerns. *DeMarco v. Davis*, 914 F.3d 383, 389 (5th Cir. 2019) (quoting *Turner*, 482 U.S. at 90). Because this case is at the initial screening phase, Lopinto has not yet put forward the policy's rationale. Accordingly, it is too early to dismiss the complaint based on the policy's justifications.

## III.    Conclusion

Because the district court erred in dismissing Johnson's complaint at this stage, REVERSE as to the claims against Sheriff Lopinto in his official capacity, and REMAND for proceedings not inconsistent with this opinion. In doing so, we express no opinion on the ultimate merits of Johnson's claims.